In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3086

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY HOWELL,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cr-00250-1 — **Gary Feinerman**, *Judge.*

ARGUED SEPTEMBER 27, 2021 — DECIDED FEBRUARY 2, 2022

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Anthony Howell successfully appealed one of his two convictions as a felon in possession of a firearm in *United States v. Howell*, 958 F.3d 589, 603 (7th Cir. 2020). He now appeals his resentencing on the second firearm conviction, claiming that he did not properly consent to appearing by video teleconference for his resentencing under the Coronavirus Aid, Relief, and Economic Security

Act, known as "the CARES Act." Pub. L. No. 116-136, 134 Stat. 281, § 15002(b) (2020).

The CARES Act has allowed federal courts to conduct felony sentencing hearings by video teleconference if (i) the Judicial Conference of the United States finds that the COVID-19 pandemic will materially affect the functioning of the federal courts; (ii) the chief judge of the district court finds that felony sentencings cannot be held in person without seriously jeopardizing public health and safety; (iii) the presiding district judge finds that a particular case calls for use of video teleconferencing at sentencing rather than further delay; and (iv) the defendant consents to proceed by video teleconference after consulting counsel. See § 15002(b)(2) & (4). The parties agree that the first three requirements were met here. The only issue on appeal is whether Howell validly consented to the use of video teleconferencing for resentencing. While the record is not as clear as we would ordinarily expect, it shows sufficiently (a) that the defendant was informed his consent was required; (b) that the defendant conferred with his counsel on the topic; and (c) that the judge, lawyers, and defendant all proceeded with a clear understanding that the defendant had consented to the use of a video teleconference. We find no reversible error.

I.   *Factual and Procedural Background*

Howell was convicted in 2018 on two counts of violating 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. He was sentenced to two concurrent 96-month terms in prison and three years of supervised release. He appealed the denial of his motion to suppress. Our opinion in *Howell I* described his initial arrest and the later search of his home that led to the two possession charges. 958 F.3d 589. We held that the police

had no reasonable suspicion to justify the frisk in which they found Howell's first pistol. *Id.* at 602. We reversed the district court's denial of Howell's motion to suppress the pistol found in that frisk and vacated his conviction on count one, but we affirmed on count two and remanded for resentencing. *Id.* at 603.

Howell's first appeal was decided in May 2020, early (we now know) in the world's struggles with the COVID-19 pandemic. In March 2020, Congress passed the massive CARES Act. To protect court staff, parties, counsel, and others from the risks posed by COVID-19, § 15002(b) of the Act permits federal courts to conduct by video teleconference some criminal proceedings that otherwise require the defendant's physical presence in court. See also Continuation of the National Emergency Concerning the Coronavirus Disease 2019 (COVID–19) Pandemic, 86 Fed. Reg. 11599 (Feb. 24, 2021). Section 15002(b) permits a felony resentencing to be held by video teleconference when the courts make certain findings about the risks of the pandemic and the need for urgency in a particular case, and when the defendant consents after consulting with counsel.

In this case, at a video conference status hearing attended by Howell on September 3, 2020, the court told him and the lawyers that it needed Howell's consent to issue a CARES Act order providing for sentencing by video teleconference. The prosecutor offered to share a draft CARES Act order that Howell's counsel could modify or approve immediately after the hearing. The court approved this plan. The court delayed the resentencing to allow Howell's counsel to confer with him either later the same day or the next.

The next day, the court issued a CARES Act order saying that "Defendant Anthony Howell moved to proceed with a video-conference resentencing hearing," and granting his motion after making the necessary findings under § 15002(b)(2)(A) of the CARES Act. Complicating matters, however, the docket contains no record of such a written motion from Howell that the court's CARES Act order said it was granting.

The next week, during the resentencing hearing being conducted by video teleconference, the judge asked Howell's counsel whether she had had the opportunity to "speak with Mr. Howell about the sentencing hearing" and to "review with him everything that you needed to review?" She answered yes. The judge then asked Howell whether he had had a chance to speak with his counsel about the Sentencing Guidelines and the presentence investigation report. Howell said that he had. Neither Howell nor his counsel objected to conducting the resentencing hearing by video teleconference. The judge then reimposed a 96-month prison term and three years of supervised release on count two.

Because Howell had already served 96 months in prison, he was effectively resentenced to time served plus the three years of supervised release. Nevertheless, Howell has appealed. He asserts that his resentencing by video teleconference violated § 15002(b) because the record lacked both evidence of his express personal consent and evidence that he knew he could withhold his consent. The government argues that the procedure was permitted by both Federal Rule of Criminal Procedure 43 and § 15002(b).

II. *Analysis*

We review legal questions de novo, such as the consent requirements for video teleconference sentencing under § 15002(b) of the CARES Act and the permissibility of video sentencing under Federal Rule of Criminal Procedure 43. See *United States v. Bethea*, 888 F.3d 864, 865–66 (7th Cir. 2018). Howell did not object to his resentencing by video teleconference in the district court. We conclude that a felony defendant cannot agree to be sentenced by video teleconference unless § 15002(b) is satisfied, so we need not consider whether he forfeited or waived this issue. See *Bethea*, 888 F.3d at 867 & n.6. We review for clear error the district court's implicit factual finding that Howell consented to waive his presence at sentencing and did so knowingly and voluntarily. See *United States v. Shanks*, 962 F.3d 317, 323 (7th Cir. 2020).

We first explain why Rule 43(c)(1)(B)'s limited exception to the presence requirement does not, on its own, permit sentencing by video teleconference. We then interpret consent requirements in the CARES Act, using comparable provisions in the Federal Rules of Criminal Procedure as guides. Finally, we explain why the district judge did not err in finding that the CARES Act consent requirement was satisfied in this case.

A. *Rule 43*

Rule 43(a)(3) provides that a criminal defendant has a right to be physically present at sentencing. This right can be waived under Rule 43(c), but physical presence is ordinarily thought to be important to the proper functioning of the criminal justice system. E.g., *Bethea*, 888 F.3d at 867 (requiring physical presence for entering guilty plea); *United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011) (discussing competing

concerns when a defendant waives his right to presence at trial). The defendant's face-to-face presence helps ensure that the district judge fully confronts the gravity of the sentence imposed. See *Bethea*, 888 F.3d at 867 (discussing importance of physical presence in various stages of a criminal proceeding). Physical presence at sentencing may also provide the defendant with the best opportunity to argue persuasively in mitigation during allocution, another right with deep roots in the common law. See *Green v. United States*, 365 U.S. 301, 304 (1960) (common law right of allocution recognized as early as 1689); Fed. R. Crim. P. 32(i)(4)(A)(ii) (providing right of allocution). The right to presence during criminal proceedings also has constitutional dimensions. *United States v. Gagnon*, 470 U.S. 522, 526 (1984) ("The constitutional right to presence is rooted … in the Confrontation Clause of the Sixth Amendment, but we have recognized that this right is protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." (internal citation omitted)).

Rule 43(a) requires the defendant's physical presence at nearly all stages of the proceedings, including sentencing, and exceptions to the Rule are limited. See Fed. R. Crim. P. 5(g); 10(c); 43(a), (b)(2) & (c). For example, Rule 43(c)(1)(B) allows a defendant who was initially present at trial to waive the right to presence at sentencing in a non-capital case when he is "voluntarily absent." The government suggests here that we should understand participation in a felony sentencing hearing by video teleconference as a species of "voluntary absence" under Rule 43(c)(1)(B). We see the issue differently.

When Rule 43 was adopted in 1944, it codified federal common law principles, including the general principle that

a criminal defendant should not be able to halt the administration of justice by fleeing after the start of a non-capital trial that began in his presence. See Fed. R. Crim. P. 43 advisory committee's note to 1944 adoption, citing *Diaz v. United States*, 223 U.S. 442, 455 (1912) (noting that persons in custody historically could not waive right to presence in felony trials, but that an accused not in custody who flees after trial commences in his presence has validly waived right to presence at any remaining proceedings). From the beginning, Rule 43 permitted courts to try a defendant who waived the right to presence under certain circumstances, but it was not clear whether courts could conduct a sentencing hearing in the defendant's absence. *United States v. Achbani*, 507 F.3d 598, 601 (7th Cir. 2007); Fed. R. Crim. P. 43 advisory committee's notes to 1995 amendments (noting that prior to 1995 amendments to Rule 43, it was "doubtful that a court could sentence a defendant who had been present during the entire trial but flees before sentencing"). The 1995 amendments removed the doubt by adding the language now in Rule 43(c)(1)(B): "A defendant who was initially present at trial, or who had pleaded guilty or nolo contendere, waives the right to be present under the following circumstances: … (B) in a noncapital case, when the defendant is voluntarily absent during sentencing.…"

This waiver provision in Rule 43(c)(1)(B) gives a court the flexibility to proceed with sentencing when a defendant flees or adamantly refuses to be transported peacefully to the sentencing hearing. *United States v. Velazquez*, 772 F.3d 788, 799 (7th Cir. 2014) (noting that even a defendant in custody can be "voluntarily absent" at sentencing, such as when he resists transport to court and moving him may cause injury). We have held that Rule 43(a) does not permit a defendant to

consent to enter a plea by video teleconference. *Bethea*, 888 F.3d at 868. In *Bethea*, we found that the right to presence while entering a plea was too important and the text of Rule 43(a) too clear to permit entry of a plea by video. See *id.* at 867–68.[1] The same holds true for Rule 43(a)'s presence requirements during a felony sentencing.

Consistent with *Bethea*, we find that Rule 43(c)(1)(B)'s limited exception did not create a general waiver system permitting sentencing by video teleconference whenever a defendant consents. The rule's exception to presence at sentencing does not apply here.

B. *Consent to Sentencing by Video Teleconference Under the CARES Act*

Under the CARES Act, however, a felony resentencing may take place by video teleconference "with the consent of the defendant … after consultation with counsel." § 15002(b)(4). We assume this consent must be knowing and voluntary like other waivers of the right to presence protected by Rule 43(a). See *Benabe*, 654 F.3d at 773 (finding no error when district court barred two defendants from courtroom the day before trial began because they knowingly and voluntarily waived their right to be present); see also *Crosby v. United States*, 506 U.S. 255, 259–61 (1993) (noting that part of justification for "voluntary absence" exception to Rule 43(a) is

---

[1] Westlaw has recently "red-flagged" *Bethea* on this point, citing our recent opinion in *United States v. Coffin*, — F.4th at —, No. 20-2385, 2022 WL 189893, at *3 (7th Cir. Jan. 21, 2022), which noted that § 15002(b) of the CARES Act created an exception to Rule 43 for plea and sentencing hearings while the pandemic makes in-person hearings risky.

that midtrial flight by a defendant present at start of trial acts as knowing and voluntary waiver).

The consent requirement in § 15002(b)(4) of the CARES Act is rarely controversial. The record in this case, however, lacks a defense motion or an oral statement by the defendant himself expressing his consent to sentencing by video teleconference, so consent here was not as clear as in the vast majority of cases. See, e.g., *United States v. Coffin*, — F.4th —, —, No. 20-2385, 2022 WL 189893, at *3 (7th Cir. Jan. 21, 2022) (defense counsel orally waived objection to findings needed for sentencing by video teleconference); *United States v. Rodriguez-Monserrate*, 22 F.4th 35, 45 (1st Cir. 2021) (defendant gave oral and written consent to sentencing in video teleconference). Instead, it appears that the judge, the lawyers, and the defendant all proceeded with a clear but implicit understanding that the defendant had consented.

The legal question before us is what the record must show to establish the defendant's consent to sentencing by video teleconference. Howell argues that the record must show a personal statement by him, not his counsel, expressing his consent. Such a showing would be helpful, but we do not interpret § 15002(b)(4) as requiring it. Federal criminal proceedings and the Federal Rules of Criminal Procedure provide an accused or convicted defendant with a host of rights, nearly all of which may be waived with the defendant's consent. Various provisions for consent use different language imposing different procedural requirements. A review of similar provisions, including those applicable to a defendant's presence or the use of video teleconferences, persuades us that § 15002(b)(4) does not impose the more stringent requirements advocated by Howell. Our baseline for these

comparisons is the governing language in § 15002(b)(4) itself, providing an exception to the physical presence requirement for sentencing under Rule 43(a) "with the consent of the defendant … after consultation with counsel."

The most stringent consent or waiver requirements are those in Rule 11 for pleading guilty, in which a defendant waives the most fundamental rights of the accused under the Bill of Rights. Rule 11(b)(1) requires the judge to "address the defendant personally in open court" to inform the defendant of numerous points. Rule 11(b)(2) requires the judge to "address the defendant personally in open court" and to determine that the plea is voluntary, and Rule 11(g) further requires that the entire colloquy in open court be recorded. The language of § 15002(b)(4) does not include such demanding requirements.[2]

Or compare Rule 23(a), which allows a defendant to waive her right to a jury trial. It requires expressly that the defendant's waiver be in writing, but it does not require the court to address the defendant personally and in open court, as with a guilty plea. Rule 23(a) also requires the government to

---

[2] Howell agrees that we should interpret consent in § 15002(b)(4) by reference to the Federal Rules of Criminal Procedure, but urges that in the Rules "consent 'means express approval,' not silence or inaction." Reply Br. at 7, citing *United States v. Pierre*, 120 F.3d 1153, 1156 (11th Cir. 1997). In *Pierre*, the Eleventh Circuit found that the defendant's plea on immigration charges was not conditional under Rule 11(a)(2) because the government did not give express approval. *Id.* (remanding on other grounds). We do not disagree, but a conditional plea agreement is a poor analog for a defendant's waiver of presence at sentencing: "A conditional plea is not just the defendant's choice," for it requires the consent of the defendant, the government, and the court. *United States v. Alvarez-Quiroga*, 901 F.2d 1433, 1437 (7th Cir. 1990).

"consent," but without requiring its written consent. Again, § 15002(b)(4) does not impose a writing requirement.

Other rules addressing personal presence and the use of video teleconferences at other stages offer further guidance. Rule 5(g) provides that a defendant's initial appearance may be conducted by video teleconference "if the defendant consents," without imposing more specific requirements, such as consultation with counsel. Rule 10 governs arraignments. Rule 10(b) provides that a defendant may waive his right to be present for arraignment in most cases with "a written waiver signed by both the defendant and defense counsel" that waives the appearance and affirms that the defendant has received a copy of the information or indictment and pleads not guilty. By comparison, Rule 10(c) allows use of video teleconferencing for an arraignment "if the defendant consents," without more specific requirements. The contrast between the requirements for waiving presence entirely and allowing video teleconferencing is clearly not accidental.

We have discussed above Rule 43 and its requirements for the defendant's physical presence at different stages of the prosecution. Rule 43(c) addresses waiver by various forms of conduct, showing that such waiver or consent may be implied under those circumstances. Rule 43(b)(2) allows use of video teleconferencing (or even a defendant's complete absence) in misdemeanor cases at any stage of the case "with the defendant's written consent." That provision does not require the court to address the defendant personally, nor does it expressly require consultation with counsel.

These different provisions persuade us that these variations in phrasing impose different minimum procedural requirements for such waivers and consents, including for use

of video teleconferencing in a criminal prosecution. In § 15002(b)(4) of the CARES Act, we do not find a requirement of a written consent or an on-the-record exchange directly between the judge and the defendant.

We presume that "Congress is aware of existing law when it passes legislation." *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990), citing *Cannon v. University of Chicago*, 441 U.S. 677, 696–97 (1979). If Congress wanted to demand express evidence in the record of a defendant's consent without requiring a writing, it could have drafted § 15002(b)(4) to include language like that used in Rule 58(b)(3), which governs consent to plea before a magistrate judge on a petty offense or other misdemeanor. On a misdemeanor charge that is not a petty offense, a magistrate judge may take a guilty plea "only if the defendant consents either in writing or on the record … and specifically waives trial before a district judge." Congress did not include such language in § 15002(b)(4).

From these comparisons, we conclude that the use of video teleconferencing for a felony sentencing under § 15002(b)(4) requires evidence of the defendant's knowing and voluntary consent after conferring with counsel, but that the statute does not impose specific procedural or evidentiary requirements to prove such consent. Accordingly, the defendant's consent may be inferred from his actions before the district court.

C. *Howell's Consent to Resentencing by Video Teleconference Under the CARES Act*

Howell's consultation with counsel is not at issue in this case. The record also shows that the district court was fully aware of the need for the defendant's consent to go forward

with sentencing by video teleconference. We find it difficult to imagine that the judge would have gone forward if he had had even the slightest doubt whether Howell consented. Accordingly, we read this record as reflecting an implicit finding by the district court that Howell had knowingly and voluntarily consented to the use of video teleconferencing. We review that determination under the deferential clear-error standard. See *Shanks*, 962 F.3d at 323–24 (applying clear-error standard to district court's finding that defendant knowingly and voluntarily waived right to presence at trial by implication from conduct). We will not overturn the district court's findings of fact unless we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Williams*, 718 F.3d 644, 649 (7th Cir. 2013), quoting *United States v. Sauerwein*, 5 F.3d 275, 278 (7th Cir. 1993).

Recall that Howell was in the video status hearing on September 3, 2020 when the judge asked "do I have the defendant's consent to proceed by video?" Howell himself did not respond, and if that were all we had, we could not uphold the finding of consent. Nor does the record include a separate defense motion to conduct the resentencing by video teleconferencing, which would also certainly be sufficient. There is more, however. At the September 3 status conference, the judge explained in the defendant's presence that he needed a CARES Act order to conduct a video sentencing, and that this could be done only if the defendant consented. Immediately after, the record of the status conference shows that counsel planned to be in touch about reviewing and submitting a motion or order pursuant to the CARES Act, and the next day the district court noted on the docket that "Defendant Anthony Howell moved to proceed with a video-conference resentencing hearing." Dkt. 358.

At the resentencing hearing a week later, the district judge asked Howell's attorney whether she had an opportunity to speak with him about the resentencing hearing, and she replied that she had. After that, Howell and his counsel said nothing more about the use of video teleconferencing and simply went forward with the resentencing. On this issue of consent, this record is not as clear as we would ordinarily hope to see, but given the record as a whole, we can affirm.

If there had been even a hint that the use of video teleconferencing might later become an issue, we are confident that the judge would have reacted swiftly to ensure that the record of Howell's consent was crystal clear. The best practice would be to obtain the defendant's consent either orally on the record or in writing, but the CARES Act was not drafted to require that much. Given the record as a whole, we are satisfied that the district court did not clearly err in its implicit finding that Howell consented, after consulting his counsel, to proceed with the resentencing by video teleconference.

The judgment of the district court is AFFIRMED.